IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JPI GROUP LLC**<br>1700 Market Street<br>Suite 1005<br>Philadelphia, PA 19103 | : <br> : <br> : <br> : <br> : | **CIVIL ACTION NO.** |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| **MILHOUSE ENGINEERING AND**<br>**CONSTRUCTION, INC.**<br>333 Wabash Avenue<br>Suite 2901<br>Chicago, ILL  60604 | : <br> : <br> : <br> : <br> : | |
| Defendant. | : <br> : | |

## <u>COMPLAINT</u>

Plaintiff, JPI Group, LLC ("Plaintiff" or "JPI") by and through their undersigned counsel, file this Complaint sounding in breach of contract against Defendant Milhouse Engineering and Construction ("Defendant" or "Milhouse"), and in support thereof hereby avers as follows:

## I.    INTRODUCTION

1.    JPI brings this action sounding in Breach of Contract and Quantum Meruit against Defendant Millhouse, who has failed and refuses to pay for services provided by JPI in support of projects undertaken by Defendant primarily for utility client Nicor Gas. Defendant has breached this agreement without explanation, and has used the personnel provided to Defendant and paid for by JPI to unjustly enrich itself without paying JPI for the provided services. Defendant cannot claim and has not claimed that JPI has failed in

any respect to provide the bargained for services; in fact, Defendant has secondarily violated their contractual agreement with JPI by in effect stealing JPI's employees to continue to service its utility client. JPI respectfully request that this Court enter an Order mandating that Defendant to pay to JPI at least $281,557, plus interest and attorneys' fees, and any other relief this Court may deem appropriate.

## II.    JURISDICTION & VENUE

2.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1332, in that there is a diversity of citizenship between JPI and Defendant, and the matter in controversy, exclusive of interest and costs, is in excess of $75,000.

3.    This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this District.

## III.    PARTIES

4.    Plaintiff JPI is Pennsylvania limited liability company with a business address of 1700 Market Street, Suite 1005, Philadelphia, PA 19103.

5.    Defendant Milhouse is, upon information and belief, a corporation authorized and existing under the laws of the state of Illinois.

## IV.    FACTUAL BACKGROUND

8.    JPI is, among other things, engaged in the business of providing temporary or contract labor and other personnel to its clients.

10.    Defendant Milhouse is an engineering and construction management firm that services, *inter alia*, utility clients in the Midwest section of the United States.

11.     Defendant Milhouse is currently engaged in acting as a contractor or subcontractor on numerous projects for Nicor Gas, a natural gas distribution company with its headquarters in Naperville, Illionois. .

12.     Defendant Milhouse sought to obtain project employees to perform engineering work for Nicor Gas related projects.

13.     On March 19, 2021, JPI and Defendant Milhouse entered into that certain Services Agreement ("Agreement") attached herewith as Exhibit "A", which provided that "JPI shall provide to ..[Milhouse]..one or more Contract Employees to provide services under Client's management and supervision.." *See* Exhibit "A", §2.1.

14.     Further, the Agreement provided that JPI would provide weekly invoices to Defendant for services provided by JPI personnel ("JPI Contract Employees"). Importantly, the Agreement states that "<u>Payment in full for invoices via check or EFT shall be due when Client receives payment from end client but not to exceed sixty (60) days from invoice date</u>." *See* Exhibit "A" §5. Per the Agreement, JPI invoices that are more than seven (7) days past due are subject to a late charge of one percent (1%) per month on the amount of the past due balance. *See* Exhibit "A"§5.

15.     In executing the Agreement, Defendant also agreed that where it is in default for lack of payment, Defendant shall pay all of JPI's expenses related to collection efforts. *See* Exhibit "A"§5.

16.     Finally, Defendant Milhouse agreed to be subject to a restrictive covenant provision, which would preclude Milhouse from directly hiring or otherwise engaging JPI Contract Employees to perform services for Defendant within twelve (12) months of the Contract Employees last day of work for Defendant through JPI. Should Defendant

Milhouse violate this provision, JPI would be entitled to an amount equal to twenty

percent (20%) of that Contract Employee's first year compensation. *See* Exhibit

"A"§10.1.

17.    During the time frame of approximately June 2023 to January 2024, JPI

provided project labor to Defendant Milhouse for work performed for Nicor Gas on well

over one hundred (100) projects, and timely submitted invoices to Defendant Milhouse

for payment of Contract Employee payroll expenses. *See* Milhouse Project List attached

as Exhibit "B".

18.    Defendant has failed to pay the invoices for payment of Contract

Employee payroll expenses related to the provision of services as discussed above. As of

the date of this pleading, Defendant Milhouse owes to JPI $256,356.55 on account of

invoices for work performed by JPI Contract Employees. *See* Invoice List attached as

Exhibit "C".

19.    Defendant's failure the JPI invoice balance for Contract Employee

services provided by JPI constitutes a breach of contract for which JPI is entitled to

recover at least $256,356.55, plus interest.

20.    JPI ceased providing Contract Employee services to Milhouse in late

January 2024. In so doing, JPI pulled its Contract Employees for all Milhouse projects.

However, and in further breach of the Agreement, Milhouse and/or an unidentified

Milhouse agent hired directly the JPI Contract Employees.

21.    Defendant's breach of §10.1 of the Agreement entitles JPI to recover an

additional $25,200.

## COUNT I

## <u>Breach of Contract</u>

22.     JPI incorporates by reference the allegations contained in paragraphs 1 through 21 as if set forth fully herein.

23.     JPI and Defendant entered into a fully valid and enforceable contract on March 19, 2021 for employment of JPI Contract Employees, which was supported by valuable and sufficient consideration.

24.     By entering into the Agreement, Defendant promised to pay JPI's invoices upon receipt.

25.     Defendant breached the Agreement by failing to pay the invoices listed on Exhibit "C", with a balance due and owing of $256,356.55, plus interest.

26.     By entering into the Agreement, Defendant promised to pay JPI an amount equal to twenty percent (20%) of a Contract Employee salary should Defendant hire JPI Contract Employees less than one (1) year after JPI has ceased the provision of services under the Agreement.

27.     Defendant breached the Agreement by directly or indirectly hiring the Contract Employees, yet failing to pay JPI the agreed upon twenty percent (20%), with a balance due and owing for this particular breach of $25,200.

28.     JPI has suffered damages as a direct and proximate result of Defendant's multiple contract breaches and is entitled to receive damages in the amount of at least $281,557.00 and such other remedies as allowed by law.

## COUNT II

## Quantum Meruit

29.     JPI incorporates by reference the allegations contained in paragraphs 1 through 28 as if set forth fully herein.

30.     At the time JPI furnished the JPI Contract Employees for the benefit of Defendant Milhouse projects, JPI reasonably expected to be paid therefore, and Defendant voluntarily and knowingly accepted the benefits of JPI's labor with full knowledge and reason to know that JPI expected to be paid. Indeed, throughout the duration of the Agreement, Defendant voluntarily and knowingly accepted the benefits of JPI's labor with full knowledge and reason to know that JPI expected to be paid.

31.     If JPI is not compensated for the reasonable value of its labor as alleged in this Counterclaim, Defendant will be unjustly enriched.

32.     Defendant is liable to JPI in quantum meruit for the reasonable value of the labor for which JPI has not been paid in the principal amount of $256,356.55, plus interest and attorneys' fees.

33.     JPI has suffered damages as a direct and proximate result of Defendant's multiple contract breaches and is entitled to receive damages and such other remedies as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs JPI Group, LLC request judgment against Defendant as follows:

1.  That this Court order that JPI have and recover a judgment for breach of contract and unjust enrichment against Plaintiff in the principal amount of

$281,557.00, plus interest thereon at the maximum legal rate from and after the due dates on CSI's respective invoices, until paid, plus attorneys' fees;

2.  For such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

**BOWMAN LLC**

Dated: March 11, 2024          By _____/s/_____

**MICHAEL A. BOWMAN**
PA Identification No.: 81762
8129 Germantown Avenue
Philadelphia, PA 19118
215 275 2338

*Attorney for Plaintiff*

# EXHIBIT A



## SERVICES AGREEMENT

THIS SERVICES AGREEMENT ("Agreement") is made this 19th day of March, 2021, by and between The JPI Group LLC, a Pennsylvania Limited Liability Corporation and affiliates including Stewart White Group LLC and JKNA Group LLC ("JPI"), and Milhouse Engineering and Construction Inc. ("Client").

## BACKGROUND

JPI is engaged in the supplemental staffing services business providing contract personnel to customers with staffing needs. Client desires to engage JPI to provide supplemental staffing services and JPI desires to be engaged by Client, all on the terms and conditions of this Agreement. As used herein, the term "Contract Employee" means an JPI employee temporarily placed with the Client pursuant to this Agreement.

NOW, THEREFORE, in consideration of the promises and mutual promises contained herein, the parties agree as follows:

**1. TERM:** This Agreement shall commence on the date this Agreement is executed by all parties, and continue for an initial term of one (1) year, and shall continue thereafter on a month-to-month basis unless earlier terminated as provided herein. This Agreement may be terminated by either party upon thirty (30) days prior written notice.

**2. CONTRACT EMPLOYEES**
**2.1. SERVICES ("Services"):** JPI shall provide to Client one or more Contract Employees as requested by Client from time to time. Such Contract Employees shall provide services under Client's management and supervision at a facility or in an environment controlled by Client. Attached hereto as *Exhibit A*, is a list of the names of the Contract Employee(s) to be placed initially with Client, standard and overtime hourly billing rates for each Contract Employee, and the starting date for each Contract Employee. Unless otherwise agreed by the parties, this Agreement shall apply to additional Contract Employees provided by JPI as requested by Client hereunder from time to time. Should Client request additional services subsequent to the execution of this Agreement, and such services are not listed on *Exhibit A* attached hereto, or should either Client or JPI request changes to hourly billing rates or other terms for any Contract Employee working under the terms of this Agreement, any such additions or changes will be mutually agreed to in writing by both parties. Such agreed upon terms shall become a part of this Agreement, as amended.

**2.2. DUTIES:** It shall be the Client's responsibility to control, manage and supervise the work of the Contract Employees assigned to Client pursuant to this Agreement. Client agrees to provide site specific training to Contract Employees. The Contract Employees shall perform only the duties and functions of the specific jobs set forth opposite the Contract Employee's name on *Exhibit A* or on the job description attached to this Agreement. In no event shall any Contract Employee be assigned or permitted to perform any other duties or functions other than those specified in *Exhibit A* for Client without the express written consent of JPI. Should Client assign the Contract Employee to perform the duties or functions of a position not listed in *Exhibit A* or within the job description attached hereto that are not reasonably determined to be within the same scope of work as the job description, JPI may, in its sole and absolute discretion, deem this Agreement breached by Client and take whatever action it deems necessary or appropriate. In this event, Client shall be liable to JPI, and indemnify JPI for all claims, damages, losses or expenses relating to such breach, as well as all hours worked by the Contract Employees.

Client agrees that it will not permit any Contract employees to (i) handle cash, negotiable instruments or other valuables without JPI's writte consent (and then only under Client's direct supervision), or (ii)

transport or convey money, securities or negotiable instruments for Client (including, but not limited to, delivering bank deposits to a bank or other institution).

**3. INDEPENDENT CONTRACTOR STATUS:** With respect to the services provided by JPI, JPI shall be an independent contractor. JPI shall provide any salary or other benefits to such Contract Employees; will make all appropriate tax, social security, Medicare and other withholding deductions and payments; will provide worker's compensation insurance coverage for its Contract Employees; and will make all appropriate unemployment tax payments.

**4. INVOICES:** JPI shall submit weekly invoices to Client for services rendered by Contract Employee(s) for the number of hours worked by Contract Employee(s) the pevious week. Overtime will be billed at the rates listed on *Exhibit A*, or as otherwise agreed by both parties, for hours worked by Contract Employee(s) in excess of forty (40) hours per week, or as otherwise required by law. The number of hours billed by JPI shall be supported by a time card or other time record approved by a representative of the Client. Invoices submitted by JPI to Client are presumed to be accurate and fully payable on the terms contained therein unless disputed by Client within five (5) business days of Client's receipt of the invoice.

**5. PAYMENT DEFAULT:** ==Payment in full for invoices via check or EFT shall be due when Client receives payment from end client but not to exceed sixty (60) days from invoice date,== at The JPI Group LLC, PO Box 75343, Chicago, Illinois 60675-5343. Invoices that are more than seven (7) days past due are subject to a late charge of one percent (1%) per month on the amount of the past due balance. Late charges shall be calculated using the U.S. Method, therefore interest will not be compounded on the past due balance. If the Client's account is past due or Client has exceeded JPI's established credit limit, JPI shall notify Client verbally or in writing of such occurrence. Upon such notice, JPI may, without additional notice, immediately cease providing any and all further Contract Employee services without any liability to Client for interruption or stoppage of pending work. In addition, the parties agree that in the ordinary course of business JPI may, in its sole discretion, apply payments made by Client to any outstanding Client invoice, notwithstanding any direction by client regarding application of the payment.

**6. EXPENSES:** Client shall reimburse JPI for all ordinary, necessary, and reasonable travel expenses incurred by Contract Employee(s) while performing services on behalf of Client that require Contract Employee to travel away from Client's primary job site. Client agrees to accept legible copies of receipts (or electronic copies, if billed electronically) as the supporting documentation needed to pay the expense amount on the invoice.

**7. COLLECTION:** If the Client's account, after default, is referred to an attorney or collection agency for collection, Client shall pay all of JPI's expenses incurred in such collection efforts, including but not limited to, court costs and reasonable attorneys' fees. Notwithstanding the above and the terms of Section 15.10 of this Agreement, JPI may institute proceedings to seek a default judgment in any court of competent jurisdiction in the United States.

**8. TIME RECORDS:** JPI's Time and Expense system shall be the official time record for purposes of payment under Sections 4 and 5 herein.

**9. PURCHASE ORDERS:** Payment of JPI invoices shall not be dependent upon a Client generated purchase order. If a purchase order is required pursuant to this Section, Client shall deliver to JPI a written purchase order before the Contract Employee's start date with Client. As stated in Section 15.7 herein, this Agreement and *Exhibits* constitute the entire agreement between the parties. If there is any inconsistency or conflicting terms between this Agreement and a Client purchase order, this Agreement shall



prevail. If a purchase order is required pursuant to this paragraph, failure by Client to deliver said purchase order shall not release Client of its obligations contained in this Agreement.

**10.    RESTRICTIVE COVENANT**

**10.1.    RESTRICTIVE COVENANT - CONVERSION:** JPI is not an employment agency. Its services are provided at great expense to JPI. In consideration thereof, during the term of this Agreement and for the twelve (12) month period immediately following the period for which a Contract Employee last performed services for the Client under this Agreement, Client shall not, directly or indirectly, for itself, or on behalf of any other person, firm, corporation or other entity, whether as principal, agent, employee, stockholder, partner, member, officer, director, sole proprietor, or otherwise, solicit, participate in or promote the solicitation of such Contract Employee to leave the employ of JPI, or hire or engage such Contract Employee. If any Contract Employee provided by JPI to Client is engaged by Client to perform services, either directly or indirectly, within twelve (12) months of that Contract Employees last day of work at Client through JPI, the Client will pay JPI, as liquidated damages, an amount equal to 20% of the Contract Employee's first year salary, including bonuses, with Client.

**10.2.    RESTRICTIVE COVENANT – RIGHT TO HIRE:** Notwithstanding, the above Section 10.1, if Contract Employee has completed the minimum assignment duration at Client for JPI ("Temp to Hire Duration"), pursuant to *Exhibit A*, there will be no fee for directly hiring the Contract Employee.

**10.3.    ACCOUNT STATUS:** If Client exercises its right to hire a Contract Employee at a time when Client is in breach of Section 5 of this Agreement or Client's account is otherwise not current or in good standing, Client agrees to pay the fee of 30% of the Contract Employee's first year salary, including bonuses, with Client, even though the Contract Employee has completed the Temp to Hire Duration outlined in the attached *Exhibit A*.

**10.4.    SUBMITTALS - RIGHT TO HIRE:** Resumes submitted to Client are confidential and for Client use only. Client agrees that JPI is the exclusive representative of all candidates for which resumes are submitted to Client by JPI in response to Client requests. Accordingly, Client agrees that if any candidate submitted to Client by JPI is engaged to perform services, either directly or indirectly, by Client within twelve (12) months of receipt of the resume, Client agrees to pay to JPI, as liquidated damages an amount equal to 30% of the employee's first year annual salary, including bonuses.

**11.    CONTRACT EMPLOYEE PERFORMANCE:** Within the initial employment guarantee period as detailed in the attached *Exhibit A* from any Contract Employee(s) starting date, Client shall review the Contract Employee's performance and decide whether to continue the engagement of such Contract Employee. If Client is dissatisfied with the performance of the Contract Employee, and Client wishes JPI to terminate its engagement of such Contract Employee, Client must notify JPI within the initial period, specifying the reasons for its dissatisfaction, and Client shall not be required to pay for the hours worked by that Contract Employee during the initial period, provided its reasons for termination are not unlawful, and are bona fide.. If Client becomes dissatisfied with the performance of a Contract Employee after the initial period, Client may request that JPI terminate the engagement of that Contract Employee upon written notice to JPI, but Client shall pay for all hours worked by the terminated Contract Employee from the first hour of work up to and including the date of termination.

**12.    LIMITATION OF LIABILITY:** JPI does not warrant or guarantee that the Contract Employee(s) placed pursuant to this Agreement will produce any particular result or any solution to Client's particular needs, or perform services in any particular manner. Accordingly, Client acknowledges and agrees that JPI is not responsible for any aspects of the Contract Employees work or the

Client's project, including, without limitation, any deadlines or work product. Because JPI is providing supplemental staffing services only, and Client is directing and supervising the Contract Employees who render these services, JPI shall not be liable (i) for any claims, costs, expenses, damages, obligations or losses arising from or in connection with the acts or omission of any Contract Employee, including, but not limited to, work on engineering or design concepts or calculations or related drawings, software programs, designs or documentation, or (ii) for any indirect, special or consequential damages (including, but not limited to, loss of profits, interest, earnings or use) whether arising in contract, tort or otherwise. Client shall indemnify JPI and hold it harmless against and from any such claims made or brought by third parties, including any and all costs incurred in connection with such claims.

**13.    CLIENT PROPERTY**

**13.1.    WORK PRODUCT:** All work product of every kind performed by any Contract Employee on behalf of Client shall be the sole and exclusive property of Client.

**13.2.    DAMAGES:** JPI does not provide insurance coverage for any real or personal property of Client, including but not limited to machinery, equipment, computers, tools, vehicles or other real or personal property which is owned or leased by Client. Accordingly, Client agrees that in the event it supplies, provides or otherwise allows Contract Employees to use or have access to any property of Client, (including but not limited to cell phones, laptop computers, tools, etc.), Client shall be solely responsible for any damage, theft, repair or loss associated with this property, and Client shall indemnify, hold harmless and defend JPI against and from such claims made or brought for any damaged, stolen, or lost property of Client.

**13.3.    CONFIDENTIALITY:** JPI recognizes that while performing its duties under this Agreement, JPI and its Contract Employees may be granted access to certain proprietary and confidential information regarding Client's business, customers, and employees. JPI, for itself and its Contract Employees, agrees to keep such information confidential and the obligations of this paragraph will survive the termination of this Agreement. This paragraph does not apply to information that was previously known or information that is available in the public domain.

**14.    NOTICES**

**14.1.    MANNER:** Any notice or other communication ("Notice") required or permitted under this Agreement shall be in writing and either delivered personally or sent by email, overnight delivery, express mail, or certified or registered mail, postage prepaid, return receipt requested.

**14.2.    ADDRESSEE:** A Notice shall be addressed, in the case of JPI, to The JPI Group LLC, Attention: Contracts Department at 1700 Market Street, Suite 1005, Philadelphia, PA 19103 or, in the case of Client, to _____. If sent by email, a Notice shall be sent to JPI at accounting@thejpigroup.com or to Client by fax at (815) 923-7842.

**14.3.    DELIVERY:** A Notice delivered personally shall be deemed given only if acknowledged in writing by the person to whom it is given. A Notice sent by email shall be deemed given when receipt of such Notice is given, or where no read receipt is requested by the sender, at the time of sending, provided that no delivery failure notification is received by the sender within forty-eight (48) hours of sending such Notice. A Notice sent by overnight delivery or express mail shall be deemed given twenty-four (24) hours after having been sent. A Notice that is sent by certified mail or registered mail shall be deemed given forty-eight (48) hours after it is mailed. If any time period in this Agreement commences upon the delivery of Notice to any one or more parties, the time period shall commence only when all of the required Notices have been deemed given.



**14.4.  CHANGES:** Either party may designate, by Notice to the other, substitute addressees or addresses for Notices, and thereafter, Notices are to be directed to those substitute addresses.

**15.   MISCELLANEOUS**
**15.1.   GOVERNING LAW:** The laws of the Commonwealth of Pennsylvania shall govern the validity and construction of this Agreement and any dispute arising out of or relating to this Agreement, without regard to the principles of conflict of laws.

**15.2.   SEVERABILITY:** A ruling by any court that one or more of the provisions contained in this Agreement is invalid, illegal or unenforceable in any respect shall not affect any other provision of this Agreement so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Thereafter, this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had been amended as originally contemplated by this Agreement to the greatest extent possible.

**15.3.   COUNTERPARTS:** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original. In that event, in providing this Agreement it shall not be necessary to produce or account for the counterpart signed by the party against whom the proof is being presented.

**15.4.   HEADINGS:** The section and subsection headings have been included for convenience only, are not part of this Agreement and shall not be taken as an interpretation of any provision of this Agreement.

**15.5.   BINDING EFFECT:** This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legatees, personal representatives and other legal representatives, successors and permitted assigns. Except as otherwise specifically provided, this Agreement is not intended and shall not be construed to confer upon or to give any person other than the parties any rights or remedies.

**15.6.   AMENDMENTS AND MODIFICATIONS:** Except for modifications to *Exhibit A* pursuant to Section 2 herein, this Agreement may be amended, waived, changed, modified or discharged only by an agreement in writing signed by all of the parties.

**15.7.   ENTIRE AGREEMENT:** This Agreement and *Exhibits* attached hereto constitutes the entire agreement between the parties, and there are no representations, warranties, covenants or obligations except as set forth in this Agreement. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties, relating to any transaction contemplated by this Agreement.

**15.8.   WAIVER:** Failure to insist upon strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of that term, covenant or condition or of any other term, covenant or condition of this Agreement. Any waiver or relinquishment of any right or power hereunder at any one or more times shall not be deemed a waiver or relinquishment of that right or power at any other time.

**15.9.   REMEDIES CUMULATIVE:** The remedies set forth in this Agreement are cumulative and are in addition to any other remedies allowed at law or in equity. Resort to one form of remedy shall not constitute a waiver of alternate remedies.

**15.10.   ARBITRATION:** Except as provided in Section 7 of this Agreement, all disputes, controversies or differences arising in connection with the validity, execution, performance, breach, non-renewal or termination of this Agreement shall be finally settled in an arbitration proceeding under the Rules of the American Arbitration Association by three arbitrators in accordance with the Commercial

Arbitration Rules then in effect of the American Arbitration Association. Selection of the arbitrators shall be as follows: each party shall appoint one arbitrator within twenty (20) days after the parties have agreed to go to arbitration, and those two arbitrators shall appoint a third arbitrator who shall act as chairman, within a twenty (20) day period thereafter. If the parties fail to appoint the chairman within said period, the parties will apply to the American Arbitration Association for appointment of the third arbitrator. The parties agree to be bound by the findings of the arbitration. Notwithstanding the foregoing, the courts shall have jurisdiction over injunctive or provisional relief pending arbitration. The arbitrators shall not be empowered to award punitive damages to any party. The non-prevailing party to the arbitration shall pay all the prevailing party's expenses of the arbitration, including reasonable attorneys' fees and other costs and expenses incurred in connection with the prosecution or defense of such arbitration.

**15.11.  BACKGROUND:** The Background is a part of this Agreement.

**15.12.  ASSIGNMENT:** No party shall transfer or assign any or all of its rights or interests under this Agreement or delegate any of its obligations without the prior written consent of the other party; provided, however, that JPI may transfer or assign its rights or interests, or delegate its obligations, under this Agreement to any parent, subsidiary or affiliate without the prior written consent of Client.

**15.13. MOTOR VEHICLES:**   Contract Employee(s) are not authorized to operate a motor vehicle without JPI's prior written permission. Client shall not request or require Contract Employee(s) to perform tasks which require driving a motor vehicle without JPI expressed written permission.

**15.14. COMPLIANCE:**   Client agrees that it will comply with applicable federal, state, and local laws in connection with the services provided by JPI hereunder, including but not limited to the following:

**15.14.1.  EQUAL OPPORTUNITY:**   JPI is an equal opportunity employer and refers Contract Employees regardless of race, sex, color, religion, creed, ancestry, national origin, disability, age, marital status or other protected class status pursuant to applicable law.   Client agrees and warrants that it will not reject Contract Employees, or otherwise deem Contract Employees unacceptable, or take any other action for any reason prohibited by federal, state or local laws including, but not limited to, laws pertaining to employment discrimination or employee safety.   Client will indemnify, defend JPI with respect to any and all claims that Client took action in violation of federal, state, and/or local laws, including costs of suit, settlement and attorneys' fees.

**15.14.2. PREVAILING     WAGE    –    GOVERNMENT REQUIREMENTS:** Client represents and warrants that the services to be provided by Contract Employees are not subject to any federal, state, or local prevailing wages and Client has not provided to JPI any applicable prevailing wage determinations and flow down provisions. Client agrees that Client is responsible for the accuracy of any such wage determinations and agrees to indemnify JPI for any claims, costs which result from the inaccuracy of the Client provided wage determination including the failure to notify JPI that the services provided by Contract Employees are or were required to be paid at a prevailing wage.  In addition, Client represents and warrants that the services to be provided by Contract Employees are not supporting a contract for the United States, local or state government. Client agrees that Client is responsible for prior notification to JPI of any and all projects that support a contract with the United States, local government.

**15.14.3. AVIATION REGULATIONS:** Client represents that none of the services to be performed by any Contract Employee will be FAA-regulated as a "SAFETY-SENSITIVE FUNCTION".  Client



agrees to be solely responsible for making such determination(s), and Client agrees to indemnify JPI and hold JPI harmless for any claims, costs or damages which may result from the Client's breach of its obligations contained herein.

**15.14.4. HEALTH AND SAFETY:** Client shall provide a safe, clean work environment that complies with all applicable local, state and federal laws. Client agrees to train, certify, evaluate and orient all Contract Employees in all applicable safety (IIPP), hazardous communication (SDS information, etc.) ergonomic and operational instructions in the same manner as Client employees and as required by policy or by law, including but not limited to, all federal OSHA and equivalent state agency requirements, guidelines and standards. Client agrees to document Contract Employee site specific training, which documents the date and type of training conducted. Further, Client agrees to notify JPI if any health and safety medical testing or medical surveillance will be required for Contract Employees. Client agrees to notify JPI of any changes in occupational exposures that would require medical testing or medical surveillance. To the extent a Contract Employee is obligated to meet site-specific training requirements in order for Client to comply with applicable site-specific legal requirements, the Client shall provide the Contract Employee with all necessary training before placing the Contract Employee into the work environment and before allowing the Contract Employee to commence the specific assignment. Client shall provide and require all JPI Contract Employees to wear all appropriate safety equipment. Client will notify JPI immediately in the event of an accident or medical treatment of any Contract Employee, and will provide a completed supervisor's report of injury. JPI may perform, if feasible and if reasonably requested by JPI, an inspection of the workplace to conduct its own hazard assessment or to ensure implementation of the Client's safety and health obligations, but only with prior approval from Client, which shall not be unreasonably withheld.. Client agrees to provide the necessary and accurate information to complete this assessment. In the event of an accident or other incident involving a Contract Employee, JPI shall have the right to conduct an onsite investigation. Client shall cooperate with JPI in the conduct of its investigation. Client will be responsible for all OSHA recordkeeping responsibilities required by law in the performance and execution of the terms of this agreement. Client shall indemnify JPI and hold it harmless against and from any claims made or brought as a result of Client's breach of its obligations contained in this paragraph.

**15.14.5. INTERNATIONAL TRAVEL:** Contract Employee(s) are not authorized to travel internationally without JPI's prior written permission. Client shall not request or require Contract Employee(s) to perform tasks which require international travel without JPI's prior written permission.

**15.14.6. OTHER REQUIREMENTS:** Client acknowledges and agrees that it shall be responsible for notifying JPI of any other industry-specific law or regulation it is made aware of and that is applicable to the services provided by JPI prior to any JPI employee providing any services.

**15.15. ANNUAL INFLATION ADJUSTMENT:** Within the first sixty (60) days of every calendar year, JPI reserves the right to adjust established bill rates with Client by up to 3% to cover specific direct cost increases; provided, however, that such increase shall not, in any event, exceed the precentage fee increase provided to Client, if any, by Nicor Gas Company for the respective calendar year. This bill rate adjustment will include any statutory, employee benefit, or contract employee compensation increases. JPI will submit a revised Exhibit A reflecting the bill rate adjustment at the effective date of change to the Client for documentation purposes. If direct cost increases are greater than 3% then JPI will secure a revised Exhibit A with Client documenting the new agreed upon rates. Any rate adjustment will be applicable on a going forward basis only.

**WE**, the undersigned have executed this Agreement the day and year first above written.

**The JPI Group LLC**

By: _____

Name: _____Paul Douglas_____

Title _____President_____

Date: _____04-22-2021_____

**Client: Milhouse Engineering and Construction Inc.**

By: _____

Name: _____JOSEPH ZURAD_____

Title: _____CHIEF ENGINEERING OFFICER____

Date: _____04/22/21_____

# EXHIBIT B

# Project List - Billable P-Projects - Gas

Tuesday, May 2, 2023
12:08:34 PM

Milhouse Engineering & Construction, Inc.

| Project | Project Name | Project Manager |
|---------|-------------|-----------------|
| P-12-0449-178 | AGL Nicor M8952 Des Plaines | Soja, Lukasz |
| P-12-0449-213 | AGL-Nicor MR 1011 Elmhurst | Soja, Lukasz |
| P-12-0449-2201.03 | Nicor-N15014 Marengo | Soja, Lukasz |
| P-12-0449-2201.21 | AGL-Nicor M13469 Orland Park | Soja, Lukasz |
| P-12-0449-2201.26 | Nicor-N9204 Buffalo Grove | Soja, Lukasz |
| P-12-0449-2201.29 | Nicor-N15730 Fox Lake | Soja, Lukasz |
| P-12-0449-2201.31 | AGL Nicor SC21227 Hanover Park | Soja, Lukasz |
| P-12-0449-2201.32 | AGL Nicor SC21246-Bloomington | Soja, Lukasz |
| P-12-0449-2201.36 | AGL Nicor SC21263-Monee | Soja, Lukasz |
| P-12-0449-2201.37 | Nicor-SC19219 Naperville | Soja, Lukasz |
| P-12-0449-2201.38 | AGL Nicor N10930 Lakewood | Soja, Lukasz |
| P-12-0449-2201.42 | Nicor-MI13108 Orland Park | Soja, Lukasz |
| P-12-0449-2201.46 | AGL Nicor N15015 Morrison | Soja, Lukasz |
| P-12-0449-2201.47 | Nicor-N16009 Harvard | Soja, Lukasz |
| P-12-0449-2201.48 | AGL Nicor N13622 Antioch | Soja, Lukasz |
| P-12-0449-2201.49 | AGL Nicor SC19319 Aurora | Soja, Lukasz |
| P-12-0449-2201.50 | AGL Nicor SC21422 Westmont | Soja, Lukasz |
| P-12-0449-2201.53 | AGL Nicor M13625 Itasca | Soja, Lukasz |
| P-12-0449-2201.54 | AGL Nicor M13071 Park Forest | Soja, Lukasz |
| P-12-0449-2201.59 | AGL-Nicor M13522 Orland Park | Soja, Lukasz |
| P-12-0449-2201.65 | AGL Nicor SC17028 Lomax | Soja, Lukasz |
| P-12-0449-2201.66 | AGL Nicor SC20443 Wheaton | Soja, Lukasz |
| P-12-0449-2201.70 | Nicor-SC21982 Yorkville | Soja, Lukasz |
| P-12-0449-2210.04 | AGL-Nicor VW244 Lincolnwood | Soja, Lukasz |
| P-12-0449-2210.05 | AGL-Nicor MR1847 Rosemont | Soja, Lukasz |
| P-12-0449-2210.07 | Nicor-BS445 BS446 Beecher | Soja, Lukasz |
| P-12-0449-2210.08 | Nicor-BS447 BS448 Grant Park | Soja, Lukasz |
| P-12-0449-2210.09 | Nicor-VW207-1 Prospect Heights | Soja, Lukasz |
| P-12-0449-2210.15 | AGL-Nicor BS274 Momence | Soja, Lukasz |
| P-12-0449-2210.17 | Nicor-VW39 Niles | Soja, Lukasz |
| P-12-0449-2210.19 | AGL-Nicor BS194 Chicago Heights | Soja, Lukasz |
| P-12-0449-2210.20 | AGL-Nicor VW63 Park Ridge | Soja, Lukasz |
| P-12-0449-2210.21 | AGL Nicor BS237 East Dundee | Soja, Lukasz |
| P-12-0449-2210.22 | Nicor-BS582 Rock Falls | Soja, Lukasz |
| P-12-0449-2210.23 | Nicor-Nicor BS380 Pecatonica | Soja, Lukasz |
| P-12-0449-2210.24 | AGL Nicor BS601 Dwight | Soja, Lukasz |
| P-12-0449-2210.25 | AGL Nicor MR1973 Cicero | Soja, Lukasz |
| P-12-0449-2211.04 | Nicor-MR1838 Burbank | Soja, Lukasz |
| P-12-0449-2211.14 | Nicor-RS1034 West Chicago | Soja, Lukasz |
| P-12-0449-2211.15 | AGL-Nicor RS1047 Wonder Lake | Soja, Lukasz |
| P-12-0449-2211.16 | AGL Nicor MR1954 Burr Ridge | Soja, Lukasz |
| P-12-0449-2211.17 | AGL Nicor MR1955 Wayne | Soja, Lukasz |
| P-12-0449-2211.18 | AGL Nicor MR1960 Oak Brook | Soja, Lukasz |
| P-12-0449-2211.19 | AGL Nicor MR1962 Genoa | Soja, Lukasz |
| P-12-0449-2211.20 | Nicor-MR1967 Aurora | Soja, Lukasz |
| P-12-0449-2211.22 | AGL Nicor MR1975 Kankakee | Soja, Lukasz |
| P-12-0449-2211.23 | AGL Nicor MR1977 Joliet | Soja, Lukasz |
| P-12-0449-2211.24 | AGL Nicor MR1979 Thonton | Soja, Lukasz |
| P-12-0449-2220.01 | AGL-Nicor NBA10005698 Batavia | Soja, Lukasz |
| P-12-0449-2220.02 | AGL-Nicor NBA10008856 | Soja, Lukasz |
| P-12-0449-2220.03 | AGL Nicor NBA10005698 Batavia Service/Me | Soja, Lukasz |

Original Report: Project List

| Project List by PA | | Tuesday, May 2, 2023 12:08:34 PM |
| --- | --- | --- |
| **Project** | **Project Name** | **Project Manager** |
| P-12-0449-2230.05 | Nicor-RS1009 Marengo | Soja, Lukasz |
| P-12-0449-2230.07 | Nicor-RS1013 Algonquin | Soja, Lukasz |
| P-12-0449-2230.10 | AGL-Nicor RS958 Sterling | Soja, Lukasz |
| P-12-0449-2230.11 | Nicor-RS961 Sterling | Soja, Lukasz |
| P-12-0449-2230.13 | Nicor-RS1074 Wauconda | Soja, Lukasz |
| P-12-0449-2230.14 | AGL Nicor RS932 Rockford | Soja, Lukasz |
| P-12-0449-2230.15 | AGL Nicor RS933 Rockford | Soja, Lukasz |
| P-12-0449-2230.16 | Nicor-RS934 Orangeville | Soja, Lukasz |
| P-12-0449-2230.17 | AGL Nicor RS935 Cedarville | Soja, Lukasz |
| P-12-0449-2230.18 | AGL Nicor RS936 Freeport | Soja, Lukasz |
| P-12-0449-2230.19 | AGL Nicor RS937 Belvidere | Soja, Lukasz |
| P-12-0449-2230.20 | AGL Nicor RS1086 Algonquin | Soja, Lukasz |
| P-12-0449-2230.21 | AGL Nicor RS1087 Kildeer | Soja, Lukasz |
| P-12-0449-2230.22 | AGL Nicor RS1088 Olympia Fields | Soja, Lukasz |
| P-12-0449-2230.25 | AGL Nicor RS1100 Union | Soja, Lukasz |
| P-12-0449-2230.26 | AGL Nicor RS1101 Lake Villa | Soja, Lukasz |
| P-12-0449-2230.27 | Nicor-RS1104 McHenry | Soja, Lukasz |
| P-12-0449-2230.28 | AGL Nicor RS1105 Sugar Grove | Soja, Lukasz |
| P-12-0449-2230.29 | AGL Nicor RS1126 Hodgkins | Soja, Lukasz |
| P-12-0449-2230.30 | AGL Nicor RS1115 Ingleside | Soja, Lukasz |
| P-12-0449-2230.31 | AGL Nicor RS1117 Ingleside | Soja, Lukasz |
| P-12-0449-2230.32 | AGL Nicor RS1118 Ingleside | Soja, Lukasz |
| P-12-0449-225 | AGL Nicor BS 190 St Charles | Soja, Lukasz |
| P-12-0449-2250.12 | Nicor-TP463 Saybrook to Rantoul Line | Kowalewski, Andrew |
| P-12-0449-2250.13 | Nicor-TP461 Station 284 MAOP Verific. | Kowalewski, Andrew |
| P-12-0449-2250.14 | Nicor-TP463-A Ludlow I-57 MAOP | Kowalewski, Andrew |
| P-12-0449-2250.15 | Nicor-TP463-B Ludlow Station 340 MAOP | Kowalewski, Andrew |
| P-12-0449-2250.16 | Nicor-TP463-C Rantoul Station 333 MAOP | Kowalewski, Andrew |
| P-12-0449-2270.03 | Nicor-RS1069 STA 948-A Terre Haute | Kowalewski, Andrew |
| P-12-0449-2290.01 | AGL-Nicor CE25 Station 2201197 | Kowalewski, Andrew |
| P-12-0449-2290.03 | AGL Nicor VW244 Lincolnwood Restoration | Soja, Lukasz |
| P-12-0449-268 | AGL Nicor MR775 Lemont | Soja, Lukasz |
| P-12-0449-292 | AGL-Nicor TWS055 Freeport | Soja, Lukasz |
| P-12-0449-295 | AGL-Nicor PRIM 433 Volo | Soja, Lukasz |
| P-12-0449-357 | AGL-Nicor VPE26 Skokie | Soja, Lukasz |
| P-12-0449-389 | AGL-Nicor MR1012 Skokie RE Services | Soja, Lukasz |
| P-12-0449-470 | AGL Nicor STO352 Hudson | Soja, Lukasz |
| P-12-0449-471 | AGL Nicor STO353 Hudson | Soja, Lukasz |
| P-12-0449-478 | AGL Nicor N12971 Marengo | Soja, Lukasz |
| P-12-0449-487 | AGL-Nicor BS113 Downers Grove | Soja, Lukasz |
| P-12-0449-488 | AGL-Nicor N13132 S Elgin | Soja, Lukasz |
| P-12-0449-502 | AGL-Nicor MR1424 Wilmette | Soja, Lukasz |
| P-12-0449-535 | AGL-Nicor BS32 LaGrange Park | Soja, Lukasz |
| P-12-0449-54 | AGL-Nicor PI Skokie M8600 | Soja, Lukasz |
| P-12-0449-571 | AGL-Nicor RS866 Martinton | Soja, Lukasz |
| P-12-0449-572 | AGL-Nicor RS868 Donovan | Soja, Lukasz |
| P-12-0449-576 | AGL-TC512 Station 285 | Kowalewski, Andrew |
| P-12-0449-577 | AGL-Nicor SC17935 Homer Glen | Soja, Lukasz |
| P-12-0449-585 | Nicor-NBA1955473 Batavia | Soja, Lukasz |
| P-12-0449-591 | Nicor-RS881 Dana | Soja, Lukasz |
| P-12-0449-604 | AGL-N14338-Johnsburg | Soja, Lukasz |
| P-12-0449-613 | AGL-Nicor TC266 Crawford PH3 | Kowalewski, Andrew |
| P-12-0449-625 | AGL-Nicor M12748 Countryside | Soja, Lukasz |
| P-12-0449-642 | Nicor-DOT Redlining | Soja, Lukasz |
| P-12-0449-644 | AGL Nicor TP414 STA274 TIMP | Kowalewski, Andrew |
| P-12-0449-645 | AGL Nicor SC17935-1 Homer Glen | Soja, Lukasz |

Original Report: Project List

| Project | Project Name | Project Manager |
|---|---|---|
| P-19-0449-2230.04 | AGL-Nicor RS1040 Skokie | Soja, Lukasz |
| P-22-1119-00 | Pond-MX3948811 Guerin Hydrotest | Kowalewski, Andrew |
| P-22-1187-00 | Burns-Nicor Dubuque PH8 & PH9 | Kowalewski, Andrew |
| | | |
| P-23-1188-2310.01 | AGL Nicor MR1989 Watseka | Soja, Lukasz |
| P-23-1188-2310.02 | AGL Nicor VPE14-1 Lincolnwood | Soja, Lukasz |
| P-23-1188-2310.03 | AGL Nicor VW244-1 Lincolnwood | Soja, Lukasz |
| P-23-1188-2310.04 | AGL Nicor VW28-1 Skokie | Soja, Lukasz |
| P-23-1188-2310.05 | AGL Nicor BS274-1 Momence | Soja, Lukasz |
| P-23-1188-2310.06 | AGL Nicor BS194A1 Chicago Heights | Soja, Lukasz |
| P-23-1188-2310.07 | AGL Nicor VPE16 Skokie | Soja, Lukasz |
| P-23-1188-2310.08 | AGL Nicor VPE16-1 Skokie | Soja, Lukasz |
| P-23-1188-2310.09 | AGL Nicor VPE17 Skokie | Soja, Lukasz |
| P-23-1188-2310.10 | AGL Nicor VPE17-1 Skokie | Soja, Lukasz |
| P-23-1188-2310.11 | AGL Nicor VPE68 Skokie | Soja, Lukasz |
| P-23-1188-2310.12 | AGL Nicor VPE68-1 Skokie | Soja, Lukasz |
| P-23-1188-2310.13 | AGL Nicor VW30-1 Lincolnwood | Soja, Lukasz |
| P-23-1188-2310.14 | AGL Nicor VW30-2 Lincolnwood | Soja, Lukasz |
| P-23-1188-2310.15 | AGL Nicor VW230 Niles | Soja, Lukasz |
| P-23-1188-2310.16 | AGL Nicor VW230-1 Niles | Soja, Lukasz |
| P-23-1188-2310.17 | AGL Nicor VW105 Long Lake | Soja, Lukasz |
| P-23-1188-2310.18 | AGL Nicor MR1997 Seward | Soja, Lukasz |
| P-23-1188-2310.19 | AGL Nicor MR2017 Rockford | Soja, Lukasz |
| P-23-1188-2320.01 | AGL Nicor NBA10006654 West Chicago | Soja, Lukasz |
| P-23-1188-2320.02 | AGL Nicor NBA10006654 West Chicago Meter | Soja, Lukasz |
| P-23-1188-2320.03 | AGL Nicor NBA10011097 | Soja, Lukasz |
| P-23-1188-2330.01 | AGL Nicor RS945 Palatine | Soja, Lukasz |
| P-23-1188-2330.02 | AGL Nicor RS1133 Antioch | Soja, Lukasz |
| P-23-1188-2330.03 | AGL Nicor RS1141 Marengo | Soja, Lukasz |
| P-23-1188-2330.04 | AGL Nicor RS1143 West Chicago | Soja, Lukasz |
| P-23-1188-2390.01 | AGL Nicor DOT Redlining_2023 | Soja, Lukasz |
| | | |
| P-23-1189-2350.01 | AGL Nicor TP488 New Ave TIMP | Kowalewski, Andrew |
| P-23-1189-2350.02 | AGL Nicor TP489 Maplewood Dr TIMP | Kowalewski, Andrew |
| P-23-1189-2350.03 | Nicor TP506 STA 219 MAOP | Kowalewski, Andrew |
| P-23-1189-2350.04 | AGL Nicor TP489A Maplewood Creek TIMP | Kowalewski, Andrew |
| P-23-1189-2350.05 | Nicor TP519 River Edwards TIMP | Kowalewski, Andrew |
| P-23-1189-2350.06 | Nicor TP518 100th St TIMP | Kowalewski, Andrew |
| P-23-1189-2350.07 | AGL Nicor TP435 Northtown Rd Casing TIMP | Kowalewski, Andrew |
| P-23-1189-2350.08 | AGL Nicor TP521 36th Rd and 2nd Rd TIMP | Kowalewski, Andrew |
| P-23-1189-2350.09 | Nicor TP518A IL-164 And Second St TIMP | Kowalewski, Andrew |
| P-23-1189-2350.10 | Nicor TP518B IL-9 and Co Rd 2900 TIMP | Kowalewski, Andrew |
| P-23-1189-2350.11 | Nicor TP518C IL-96 TIMP | Kowalewski, Andrew |
| P-23-1189-2360.01 | AGL Nicor TC605 AN156 RCV | Kowalewski, Andrew |
| P-23-1189-2360.02 | Nicor TC606 AN167 RCV | Kowalewski, Andrew |
| P-23-1189-2360.03 | Nicor TC607 Station 223 RCV | Kowalewski, Andrew |
| P-23-1189-2370.01 | Nicor TC602 Station 564 Ordorant Analyze | Kowalewski, Andrew |

Original Report: Project List

# Project List - MEI Projects - Gas

Milhouse Engineering & Construction, Inc.

Tuesday, May 2, 2023
12:10:21 PM

| Project | Project Name | Project Manager |
| --- | --- | --- |
| MEI-21-243- 2201.28 | AGL Nicor N13648 Lake In The Hills | Soja, Lukasz |
| MEI-21-243- 2201.67 | AGL Nicor M13034 Glenview | Soja, Lukasz |
| MEI-21-243-2201.37 | AGL Nicor SC19219 Naperville | Soja, Lukasz |
| MEI-21-243-2201.53 | AGL Nicor M13625 Itasca | Tumbush, Michael |
| MEI-21-243-2201.59 | M13522 – Orland Park | Soja, Lukasz |
| MEI-21-243-2301.02 | AGL Nicor  M14129 Bedford Park | Soja, Lukasz |
| MEI-21-243-2301.03 | AGL Nicor M9649 Burr Ridge | Soja, Lukasz |
| MEI-21-243-2301.05 | AGL Nicor SC22308 Naperville | Soja, Lukasz |
| MEI-21-243-586 | Nicor M12438-Lincolnwood | Soja, Lukasz |
| MEI-21-243-587 | Nicor M12607-Bellwood | Soja, Lukasz |
| MEI-21-243-588 | Nicor N14579-Arlington Heights | Soja, Lukasz |
| MEI-21-243-597 | Nicor M11159 Wilmette | Soja, Lukasz |
| MEI-21-554 | Nicor Gas Dubuque Replacement w Burns&Mc | Kowalewski, Andrew |
| MEI-21-555 | Nicor Gas Dubuque Replacement w Pond | Kowalewski, Andrew |
| MEI-22-059 | NSG Guerin & O"Plaine Rd MAOP w Pond | Kowalewski, Andrew |
| MEI-22-088 | Nicor Gas Joliet Header Redlines | Kowalewski, Andrew |
| MEI-22-243 | Nicor - TC183 Dover Dr HDD Redlines | Kowalewski, Andrew |
| MEI-22-254 | Peoples Gas Manlove MAOP Confirm w Pond | Kowalewski, Andrew |
| MEI-22-279 | RFP 63473 Nicor Blanket Engineering Svcs | Soja, Lukasz |
| MEI-22-391 | PGL Engineer Transmission Design 23-25 | Kowalewski, Andrew |
| MEI-22-463 | NSG Route 83 Hydro Test MAOP Reconfirmat | Kowalewski, Andrew |
| MEI-22-534 | Albany & Kennedy Tunnel #2 - PH 2 Design | Kowalewski, Andrew |
| MEI-23-088 | Nicor - Crawford PH4-PH6 | Kowalewski, Andrew |

Original Report: Project List

# EXHIBIT C

**Today's Date**      **2/28/2024**

| Period | Date | Invoice No. | Invoice Amount | | Open Balance | |
|--------|------|-------------|---------------:|---|-------------:|---|
| June | 7/4/2023 | MIL062302 - MEI | $ | 9,312.93 | $ | 9,312.93 |
| June | 7/4/2023 | MIL062301 | $ | 30,000.00 | $ | 27,000.00 |
| | | | | | | |
| July | 8/1/2023 | MIL072301 - 0449 | $ | 7,881.75 | $ | 7,881.75 |
| July | 8/1/2023 | MIL072301 - 1188 | $ | 20,223.00 | $ | 20,223.00 |
| July | 8/1/2023 | MIL072301 - Admin | $ | 10,352.25 | $ | 10,352.25 |
| July | 8/1/2023 | MIL072301 - MEI | $ | 7,564.50 | $ | 7,564.50 |
| | | | | | | |
| August | 8/28/2023 | MIL082301 - 0449 | $ | 10,473.75 | $ | 10,473.75 |
| August | 8/28/2023 | MIL082301 - 1188 | $ | 17,701.70 | $ | 17,701.70 |
| August | 8/28/2023 | MIL082301 - MEI | $ | 3,375.18 | $ | 3,375.18 |
| | | | | | | |
| September | 10/3/2023 | MIL092301 - Admin | $ | 1,048.50 | $ | 1,048.50 |
| September | 10/3/2023 | MIL092301 - 0449 | $ | 4,299.57 | $ | 4,299.57 |
| September | 10/3/2023 | MIL092301 - 1188 | $ | 25,996.68 | $ | 25,996.68 |
| September | 10/3/2023 | MIL092301 - MEI | $ | 6,000.75 | $ | 6,000.75 |
| | | | | | | |
| October | 10/31/2023 | MIL102301 - 0449 | $ | 2,848.50 | $ | 2,848.50 |
| October | 10/31/2023 | MIL102301 - 1188 | $ | 22,556.25 | $ | 22,556.25 |
| October | 10/31/2023 | MIL102301 - MEI | $ | 6,318.00 | $ | 6,318.00 |
| | | | | | | |
| November | 11/28/2023 | MIL112301 - Admin | $ | 101.25 | $ | 101.25 |
| November | 11/28/2023 | MIL112301 - 0449 | $ | 373.50 | $ | 373.50 |
| November | 11/28/2023 | MIL112301 - 1188 | $ | 20,840.81 | $ | 20,840.81 |
| November | 11/28/2023 | MIL112301 - MEI | $ | 6,174.09 | $ | 6,174.09 |
| | | | | | | |
| December | 1/3/2024 | MIL122301 - 0449 | $ | 972.00 | $ | 972.00 |
| December | 1/3/2024 | MIL122301 - 1188 | $ | 20,018.25 | $ | 20,018.25 |
| December | 1/3/2024 | MIL122301 - MEI | $ | 6,264.00 | $ | 6,264.00 |
| | | | | | | |
| January | 1/31/2024 | MIL012401 - Admin | $ | 54.00 | $ | 54.00 |
| January | 1/31/2024 | MIL012401 - 0449 | $ | 3,294.00 | $ | 3,294.00 |
| January | 1/31/2024 | MIL012401 - 1188 | $ | 540.00 | $ | 540.00 |
| January | 1/31/2024 | MIL012401 - MEI | $ | 6,999.75 | $ | 6,999.75 |
| | | **Total Due:** | **$** | **251,584.96** | **$** | **248,584.96** |

| Due Date | Days Past Due | Months Past Due | Interest (1%/month) | Open Balance with Interest |
|---|---|---|---|---|
| 9/2/2023 | 179 | 6 | $ 558.78 | $ 9,871.71 |
| 9/2/2023 | 179 | 6 | $ 1,620.00 | $ 28,620.00 |
| | | | | |
| 9/30/2023 | 151 | 5 | $ 394.09 | $ 8,275.84 |
| 9/30/2023 | 151 | 5 | $ 1,011.15 | $ 21,234.15 |
| 9/30/2023 | 151 | 5 | $ 517.61 | $ 10,869.86 |
| 9/30/2023 | 151 | 5 | $ 378.23 | $ 7,942.73 |
| | | | | |
| 10/27/2023 | 124 | 4 | $ 418.95 | $ 10,892.70 |
| 10/27/2023 | 124 | 4 | $ 708.07 | $ 18,409.77 |
| 10/27/2023 | 124 | 4 | $ 135.01 | $ 3,510.19 |
| | | | | |
| 12/2/2023 | 88 | 3 | $ 31.46 | $ 1,079.96 |
| 12/2/2023 | 88 | 3 | $ 128.99 | $ 4,428.56 |
| 12/2/2023 | 88 | 3 | $ 779.90 | $ 26,776.58 |
| 12/2/2023 | 88 | 3 | $ 180.02 | $ 6,180.77 |
| | | | | |
| 12/30/2023 | 60 | 2 | $ 56.97 | $ 2,905.47 |
| 12/30/2023 | 60 | 2 | $ 451.13 | $ 23,007.38 |
| 12/30/2023 | 60 | 2 | $ 126.36 | $ 6,444.36 |
| | | | | |
| 1/27/2024 | 32 | 1 | $ 1.01 | $ 102.26 |
| 1/27/2024 | 32 | 1 | $ 3.74 | $ 377.24 |
| 1/27/2024 | 32 | 1 | $ 208.41 | $ 21,049.22 |
| 1/27/2024 | 32 | 1 | $ 61.74 | $ 6,235.83 |
| | | | | |
| 3/3/2024 | -4 | | | $ 972.00 |
| 3/3/2024 | -4 | | | $ 20,018.25 |
| 3/3/2024 | -4 | | | $ 6,264.00 |
| | | | | |
| 3/31/2024 | -32 | | | $ 54.00 |
| 3/31/2024 | -32 | | | $ 3,294.00 |
| 3/31/2024 | -32 | | | $ 540.00 |
| 3/31/2024 | -32 | | | $ 6,999.75 |
| | | | Total Due: | $ 256,356.55 |

### Restrictive Covenant Fee

| Employee | Salary | 20% Fee |
|---|---|---|
| Alize Casas | $63,000 | $12,600 |
| Zachary McClain | $63,000 | $12,600 |
| | Total Due: | $25,200 |
| | | |
| | Grand Total: | $281,557 |